On the Merits.
The substantial charge mado by the defendant and intervenors is the illegality of the provisional seizure, and plaintiff’s absolute want of right to institute the action, by reason of the alleged agreement referred to. The defendant, in his answer, pleads specially throe several matters of fact in avoidance of this charge. These are:
1. That at the date of the provisional seizure the intervenors had been fully reimbursed their advances to defendant.
2. That their advances wore not to the plantations cultivated by the defendant, but to his store thereon.
3. That the agreement made with plaintiff contemplated a reimbursement only of necessary supplies, and not for all advancos.
It is very plausibly argued by the intervenors counsel, that by this pleading the entire subject of controversy has been narrowed down to the issues embraced in these three propositions, and that they contain a distinct admission that the agreement averred was made, and that the plaintiff’s failure to sustain them by proof, leaves him without further defense, and justifies the judgment claimed against him. Strictly and technically this may be truo, but we prefer to give him the benefit of the general denial that precedes the special pleas, and decide the case upon its real merits, and as the evidence presents it.
We gather from the record the following as the facts of this case:
The defendant, for many years prior to 1880, had been the lessee of the plantations referred to, and the intervenors had been his factors.
The plaintiff had owned the plantations sincel878. In December, 1879, the defendant leased the property for the three ensuing years at an annual rental of $6,000, and executed the written contract upon which the action was brought. In the writing there is a stipulation that defendant was to pay plaintiff $6,000, during the month of March, the same to be credited on one of several notes held or controlled by plaintiff, amounting to some $20,000.
After signing this contract the defendant applied to the intervenors to furnish the usual advances to the plantations. Upon ascertaining the terms of the lease, and that defendant was to pay $6,000 rental, at the end of the year, and $6,000 more on an old debt, they declined to make the advances. Defendant reported this fact to plaintiff and they both went to the intervenors and there was a verbal agreement entered *517 into by which the stipulated payment of $6,000 was to be made through the intervenors, and in consideration of that, it was agreed that defendant- was to ship the 'Crops to the intervenors, and continue shipping until they were reimbursed their advances, and plaintiff to relinquish all claim on the crops and the right to proceed against them for his rent until they were fully paid.. Here we would note that the testimony to establish this last agreement was objected to, on the ground that it contradicts the written contract of lease. It is shown, as stated, that this agreement was made subsequently to the execution of the written one. It constituted a new and independent contract, intended to modify the original, and to this new contract there was another party, the firm of H. & C. Newman, intervenors.
It is competent to establish by parol, a subsequent change or modification of a written contract. Green leaf, Ev. ; 5 P. S. 459 ; 4 L. 30 ; 1 R. 358; 13 A. 504 ; 5 A. 597; 29 A. 551.
On the 15th of March, 1880, the $6,000 was paid to plaintiff, in conformity to the agreement, and upon its payment the plaintiff gave the following receipt:
Received, New Orleans, March 15, 1880, from H. & C. Newman, six thousand dollars, to be placed to the credit of E. Pullen’s note held by me, due January, 1879. I further relinquish my claim for rent due me by said Pullen for the current year, to-wit: for 1880, until said H. & C. Newman are reimbursed for advances made by them to said Pullen.
(Signed) L. B. Cain.
Before this date the intervenors had been advancing to the defendant, and they continued afterwards to advance for the balance of the year, and when the seizure was made they had not been reimbursed said advances. As stated by one of the Newmans, in his testimony on the trial, and quoting his own words :
“ At the date of the seizure we had not been reimbursed for advances made to Pullen during the year 1880. At that date he was indebted to us in the sum of $32,449.38, subject to a credit of eighty-one bales of cotton of the year that were unsold at the time that is unaccounted for.” .
This statement was accompanied by a corresponding account found in the record, and is not contradicted.
Notwithstanding this fact, the plaintiff, after applying to the intervenors to pay the rent for that year (1880) which was declined, on the 13th of December, 1879, instituted this suit, which was for the rents of that year and the two following years; as the contract stipulated, that if the rent of the first year was not paid at maturity the whole for the three years should become due, and the suit, as previously stated, was accompanied by a seizure, under which the crops and all the movable *518 effects of the defendant were seized, inflicting, as is conclusively shown, a severe loss, from the causes set forth in the pleadings.
The plaintiff justifies his action and his right to make the seizure, on the following grounds, which we will proceed to notice :
1. That the advances meant in the agreement were necessary plantation supplies, whereas the advances made were not exclusively such supplies, and the large part of them was to the plantation store.
2. That the agreement only included such advances as had been made up to the 15th of March, 1880, the date of the receipt, and not advances for the whole year; and
3. That the agreement by which plaintiff relinquished his right to seize under the conditions stated, was exclusively with the Newmans, and did not enure to the benefit of the defendant, nor affect his right to proceed against him, (defendant) so far as he was concerned.
'First. In the receipt the word “ advances” is used, which has a broader meaning than that of necessary supplies; and Pullen testifying with respect to the prior verbal agreement under which the money was paid and the receipt given, says :
“ Cain, agreeing to extend the payment of the rent money until the crop was shipped, and H. & C. Newman had been paid the amount of their advances.”
Neither in the verbal or written agreement was there any qualification or restriction in regard to the character of the advances to be made, and we can supply none. Were we to adopt the construction contended for, the intervenors could not even claim reimbursement for the very money that they paid plaintiff, and which was the consideration for the postponement. This was not a necessary plantation supply, but money paid on an old debt. Such a conclusion would be utterly illogical and extravagant.
Relative to the store, its existence on his plantations was well known to the plaintiff, and the purposes for which it was established. It is shown to be strictly a plantation store, to supply the laborers and employees on the places. All their accounts were kept there and settled there. It was literally an adjunct in the planting business, and the defendant testifies that “ he never paid a dollar out of the proceeds of the store during the year for outside debts, except for labor or servants’ hire.”
The contract between the parties clearly included such advances.
Second. The agreement, in our opinion, did include all the advances made by the intervenors during the entire year. When we recur to the objections made by the intervenors to advancing for the defendant, in view of his obligations to the plaintiff, under the first contract of lease, and the inadequacy of the security to them, as they believed, *519 under the terms of that contract, for any advances they might make, and the evident inability of defendant to pay for such advances, should that contract, as it stood, be enforced against him, plaintiff could not possibly have supposed, after the whole matter had been explained to him, and the difficulty suggested, that the intervenors only wanted to be secured for their advances up to the 15th of March, and were indifferent as to subsequent supplies. Without even this consideration, and restricting ourselves to the language of the agreement, it seems clear enough that the “ advances ” mentioned meant advances for the entire, year. The word itself and the intention of the parties, evidently referred to the point of time when plaintiff could take out his seizure, that is, at the maturity of the rent note; ■ and it is manifest, it is to this point of time that the “ advances ” to be made, referred. That intervenors might be secured their advances up to that time, plaintiff would not exercise the right the law and contract gave him, when the rent obligation was due.
Third. The plaintiff bound himself, for a valuable-consideration, not to seize the defendant’s property for the year’s rent, when the same became payable under the written lease. This is j)lain. In the face of it, it seems idle to consider the proposition involving the hairbreadth distinction that hound him only to the intervenors, and did not affect his right against the defendant. Considering that it was this very right against the defendant that he agreed to relinquish,, it seems to us a vain inquiry as to its effect relatively to the plaintiff and defendant, except so far as might concern the claim for damages setup by defendant. But, in onrview of the subject, the agreement not only concerned the defendant and enured to his benefit, hut he was a party to it. Aud a recurrence to the situation of the parties, and the evidence bearing on it, will demonstrate this beyond question.
It appears that the defendant had not only contracted towards the plaintiff for the three years rent, but was indebted to him besides many thousand dollars. He had no other means of paying, except whathe might hope to make by his skill and labor in the cultivation of these plantations.
He could not, however, attempt to cultivate these except by the help of the intervenors or some other factor. Without such aid there was but a gloomy prospect of plaintiff getting the rent for his places, much less being paid the $20,000 he had against the defendant besides. The intervenors held claims against the defendant for favors-extended in past years. There was, therefore, an active interest prompting each of the parties to make the agreement they did. It was by this each itoped to save himself. It was not an agreement between two of the parties, plaintiff and intervenors alone, but a tri-partite or tri-lateral *520 compact, all three being parties to it, and all three present in person when it was made. We refer to the parol agreement made just subsequent to the written one. The receipt given afterwards was merely a fulfilment of this agreement.
The defendant was not only a party to this agreement, but had, likewise, a large interest therein. It enabled him to make an effort to pay his debts, he procured an exemption from seizure for rent, when his obligation matured, and in a certain contingency, that is, if he did not make sufficient crops to pay his factors, he was even exempt from liability for the year’s rent itself. The defendant, therefore, had a clear right to oppose the seizure, on the ground of a violation of an agreement with himself.
It is to be observed that, although plaintiff’s seizure resulted disastrously to himself as well as to the other parties, still it must not be inferred that he lost everything. The evidence shows that 600 acres of land were cleared and put in a state to cultivate, at an estimated expense or value of $12,000. If he sustained any loss, it may have resulted purely from his own improvident and unauthorized act, committed in violation of his agreement. The damages allowed we consider moderate, under the evidence, and we cannot disturb the judgment in this respect.
It is, therefore, ordered, adjudged and decreed, that the judgment be affirmed, with costs.